## JOSEPH WALSH, JR., ET AL. *v.* TOWN OF STONINGTON WATER POLLUTION CONTROL AUTHORITY ET AL.
### (SC 15977)

Callahan, C. J., and Norcott, Katz, Palmer and Peters, Js.

Argued June 2—officially released August 24, 1999

*Timothy S. Fisher*, with whom were *Patrick Caruso* and, on the brief, *Charles Ray*, for the appellants (defendants).

*Gilbert Shasha*, with whom was *Conrad Ost Seifert*, for the appellees (plaintiffs).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*John E. Hudson* filed a brief for the Sierra Club as amicus curiae.

*Opinion*

NORCOTT, J. The defendants, the town of Stonington water pollution control authority and the town of Stonington,[1] appeal from a jury verdict in favor of the plaintiffs, Joseph Walsh, Jr., Claire Walsh, James Stewart and Ruth Stewart, awarding them damages in the framework of a common-law private nuisance cause of action for harm caused by odors emanating from the defendants' operation of a sewage treatment plant (plant) on land located near the plaintiffs' residences. In this

---

[1] The complaint originally included the department of environmental protection as a defendant, but the plaintiffs later withdrew their claims against the state.

appeal, the defendants claim that the trial court improperly: (1) instructed the jury that it could find the "unreasonable use" element of the nuisance action based solely on harm to the plaintiffs, instead of the jury being required to balance the harm to the plaintiffs against such factors as the social utility of the defendants' use of the land in conformity with the mandate of the department of environmental protection (department); (2) refused to direct a verdict for the defendants despite the fact that the plaintiffs' nuisance claim was barred by collateral estoppel because of prior findings concerning the land by the department; (3) failed to dismiss the action even though the defendants are immune from common-law nuisance actions when they engage in conduct mandated by law and approved by permit; and (4) granted each of the four plaintiffs a set of peremptory challenges despite the fact that, as married couples who jointly own the respective properties, they had a unity of interest such that under General Statutes § 51-241, each couple should have been granted only a single set of peremptory challenges. We affirm the judgment of the trial court on all issues.

The record discloses the following relevant facts. The plaintiffs, who are two married couples living on parcels of land abutting the defendants' plant brought an action against the defendants alleging, inter alia, that they had created, maintained and permitted a continuing nuisance to exist that harmed the plaintiffs' respective properties.[2] The manifestation of the alleged nuisance consisted of insects and unreasonable odors that arose from the operation of the plant.

Shortly after the plant began processing septage, "the [water pollution control authority] applied to the

---

[2] The original complaint contained five counts. Only the claim for private nuisance, however, went to the jury.

[department] for a renewal of its discharge permit.[3] See General Statutes § 22a-430. The [commissioner of environmental protection (commissioner)] appointed a hearing officer, who held a public hearing at which several citizens objected to the permit on the ground that the treatment plant was a source of odors. After the close of the hearing, one or more of the citizens filed a petition for intervention pursuant to General Statutes § 22a-19, asserting that the odors from the treatment plant constituted unreasonable pollution under the [Connecticut Environmental Protection Act (act)]. The petition was granted, and the hearing officer considered the substantive allegations therein.

"In his proposed final decision, the hearing officer found that the evidence in the record did not support the conclusion that the odors constituted unreasonable pollution. The hearing officer also determined that there was no reasonable or prudent alternative to the continued operation of the treatment plant. Accordingly, the hearing officer recommended the renewal of the permit.

[3] The water pollution control authority in the present case subsequently brought an appeal to this court concerning particular findings made in the course of the renewal of its sewage discharge permit. Specifically, the water pollution control authority "appealed to the trial court, claiming that the finding of the [commissioner of environmental protection (commissioner)] that the odor problem constitutes unreasonable pollution was improper in several respects. The trial court granted the [commissioner's] motion to dismiss the administrative appeal for lack of subject matter jurisdiction, on the ground that the [water pollution control authority] was not aggrieved by the final decision of the [commissioner granting the renewal permit]." *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 492, 662 A.2d 124 (1995). The water pollution control authority appealed to this court, and we affirmed the judgment of the trial court. Id., 498. We concluded that the water pollution control authority had not met the test for aggrievement because, although the commissioner had made a finding of unreasonable pollution, he also had granted the renewal application. Id. We include those portions of the factual and procedural history of that case that are relevant to the present appeal in the text of this opinion following this footnote.

"At oral argument as to whether the [commissioner] should accept the hearing officer's proposed final decision, the [water pollution control authority] requested that the hearing be reopened to allow [it] to submit evidence regarding the allegations in the intervenors' petition. The [commissioner] denied this request and subsequently issued his final decision on the [water pollution control authority's] application.

"In his final decision, the [commissioner] did not accept the hearing officer's proposed finding that the odors did not constitute unreasonable pollution under the act. The [commissioner], instead, determined that the testimony at the public hearing supported a finding of unreasonable pollution. The [commissioner] nevertheless issued the permit, with a condition addressing the odor problems, because there was no feasible and prudent alternative to the continued operation of the plant. Subsequently, after the [water pollution control authority] had agreed to undertake certain measures to address the odors, an administrative consent order was substituted for that condition and the permit was reissued without any condition relevant to the odor problem." *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 490–91, 662 A.2d 124 (1995).

At trial, evidence was presented including, inter alia, the testimony of the four plaintiffs that, at various times, the plant emitted sewage odors, a rotten egg-like odor, diesel odors, a sweet odor and a chlorine odor. The presence of these odors caused symptoms such as coughing, vomiting, headaches, and a burning sensation to the lips and eyes. According to the complaint, the odors became intolerable by the summer of 1990. The case went to trial in September, 1997.

After a trial, the jury returned a verdict for the plaintiffs. In accordance with that verdict, the trial court ordered the defendants to pay damages to the plaintiffs

in the amount of $675,000. Following the trial court's denial of their motions to dismiss and to set aside the verdict, the defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). Additional facts will be provided as necessary.

I

The defendants first contend that the trial court improperly instructed the jury on the "unreasonable use" element of common-law private nuisance.[4] Specifically, the defendants argue that the charge was improper because the trial court failed to instruct the jury expressly that, in determining the reasonableness or unreasonableness of the defendants' use of the land, the jury was required to balance the harm to the plaintiffs against such factors as the social utility of the defendants' use of the land in conformity with the mandate of the department. We disagree with the defendants' argument.

The trial court gave the following instruction to the jury concerning unreasonable use.[5] "To establish a nuisance, the plaintiffs must prove certain things. The first is that the condition was such that in its very nature

---

[4] It is well settled that to prevail on a cause of action for private nuisance, a plaintiff must prove four elements: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) *the use of the land was unreasonable or unlawful*; (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Emphasis added.) *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 35–36, 404 A.2d 889 (1978). In the present case, the plaintiffs conceded that the town's use of the land for the plant was lawful and, therefore, the determinative portion of this element was whether the use of the plant was unreasonable.

[5] Because our review of the charge entails viewing it as a whole; *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 507, 481 A.2d 750 (1984); we also include the portions of the charge that immediately surround the instructions on the element of unreasonable use.

was likely to inflict harm by producing odors or insects in such a manner as to unreasonably interfere with [the] plaintiffs' enjoyment of each of their properties.

"The second requirement is that the condition was a continuing one. By that, I mean simply that it must be more than a temporary condition springing from a particular or isolated act or failure to act on the part of the defendants, that it has to have continued in existence for some appreciable length of time, continuing as opposed to temporary, is what this element is about.

"A third requirement which must be met is that the use made of the property by the defendants was unreasonable or unlawful. Now there's no doubt that the [defendants were] making a lawful use of the property. You need give no thought to that requirement, but you must decide whether the use the town was making of the property was a reasonable use. You must consider the location of the condition and any other circumstances that you find proven which indicate whether the defendants [were] making a reasonable use of the property. Now, that's not to suggest that the mere use of the property for a sewer treatment plant is reasonable or unreasonable. Clearly, that's a reasonable use of property and the plaintiffs don't claim otherwise. So although this is phrased in our law as a separate and third requirement, if you don't find that the plant is producing odors or insects in such a manner as to unreasonably interfere with the plaintiffs' enjoyment of their property, then you don't really need to worry about the third [burden]. If you find that the plant is producing odors—or was or is producing odors or insects, that is the use of the property that you will find that is either reasonable or unreasonable. [The] [p]laintiffs must prove that the use of the property as they have proven the property to be used was—to have been used was unreasonable, and that's [the] plaintiffs' third burden.

"The fourth requirement is that you must determine whether the harm which came to the plaintiffs was harm which the condition caused by the defendants had a natural tendency to produce. If the plaintiffs [have] proved to you by a fair preponderance of the evidence the existence of all the circumstances that the condition on the defendants' property was such that in its very nature it was likely to inflict injury upon the person or upon the property of the plaintiffs, that the condition was a continuing one, that the use that the defendants [were] making of its property was not a reasonable one and that the harm, which came to the plaintiffs was harm which the condition had a natural tendency to produce, then the plaintiffs [have] established the existence of a nuisance."

The trial court went on to explain each of the interrogatories[6] to the jury. Concerning interrogatory number

[6] The interrogatories submitted to the jury provided as follows:

"(1) Did the plaintiffs prove the defendants' Pawcatuck Treatment Plant produced odors which unreasonably interfered with plaintiffs' enjoyment of the their property on River Road?

Yes __✓__ No _____

"(2) Did the plaintiffs prove that the defendants' Pawcatuck Treatment Plant produced insects which unreasonably interfered with plaintiffs' enjoyment of their property?

Yes _____ No __✓__

"If the answer to *either* (1) or (2) is yes, continue on to Interrogatory Number (3). If the answer to *both* (1) and (2) is no, stop and complete the defendants' verdict form.

"(3) Did the production of odors or insects at the defendants' plant have a natural tendency to inflict harm by interfering in plaintiffs' use of their property?

Yes __✓__ No _____

"(4) Was the condition created by the defendants a continuous one?

Yes __✓__ No _____

"(5) Was the use of its property by the defendants unreasonable?

Yes __✓__ No _____

"(6) Was the existence of the condition the proximate cause of the plaintiffs' damages?

Yes __✓__ No _____

"If the answers to Numbers (3), (4), (5) and (6) are yes, determine fair, just and adequate compensation for each plaintiff and complete the plaintiffs' verdict form.

five, which addressed the unreasonable use element of the nuisance claim, the trial court stated, "[n]umber five: 'Was the use of its property by the defendants unreasonable?' Yes or no as you see the evidence. Remember, we're not asking you whether its reasonable to operate a sewer treatment plant which doesn't create any odors. You won't have gotten to question five unless you have found out that—unless you've said yes to the fact that the plaintiffs either [have] proven odors which unreasonably interfered or insects which unreasonably interfered, or both. So if you already found that, the reasonableness you're determining is the reasonableness of the property in the context of producing odors and/or insects."

Shortly after the start of deliberations, the jury requested another explanation of interrogatory number five concerning unreasonable use. In response to that request, the trial court first reminded the jury that "you won't get to number five until you have . . . dealt with one and two, and then if you're still going, you deal with three and four. It's in that context that I wrote number five. If I had written number five thinking you were going to deal with that first, it would have been at least twenty lines long. So . . . my charge to you is that the interrogatories are numbered for a reason, and I don't know and I'm not asking you whether you are already at number five. I'm simply telling you that by the time you get to number five, you will have done the following things if you're following my instructions . . . ." With that preface, the trial court then again explained the process of answering the first four interrogatories.[7]

Having reached interrogatory number five, the trial court stated: "Then in that context, having answered

"If the answer to any of Numbers (3), (4), (5) and (6) is no, complete the defendants' verdict form." (Emphasis in original.)

[7] See footnote 6 of this opinion for the text of the interrogatories.

'yes' to those four, you then turn to the question—'Was the use of its property by the defendants unreasonable?'—and you will determine whether that was unreasonable or not based on the use of the property that you had determined existed by your answers to the other questions. So I hope that's clear. It really was carefully designed, but it only works if you do number one before you do number two, and you do number three and four before you do number five. And because you haven't been out very long, I'm guessing that you might have been talking idly and getting a global view before getting in . . . ." The trial court then indicated that if that understanding of the jury's request was not correct, the jury could leave the courtroom and write another note indicating that the jurors required further explanation of interrogatory number five at that point.

The defendants take issue with four particular statements of the trial court made over the course of the instructions to the jury. The defendants first cite to the statement as to whether "the mere use of the property for a sewer treatment plant is reasonable or unreasonable," when the court noted that "[c]learly, that's a reasonable use of property and the plaintiffs don't claim otherwise." The second statement to which the defendants point in support of their claim is that "[i]f you find that the plant is producing odors—or was or is producing odors or insects, that is the use of the property that you will find is either reasonable or unreasonable." Third, in the initial instruction, the defendants take issue with the court's statement during the specific explanation of the interrogatory concerning unreasonable use that "[y]ou won't have gotten to question five unless you have found out that—unless you've said yes to the fact that the plaintiffs either [have] proven odors which unreasonably interfered or insects which unreasonably interfered, or both. So if you already found

that, the reasonableness you're determining is the reasonableness of the property in the context of producing odors and/or insects." Lastly, the defendants take exception to the trial court's statement during its supplemental instruction, that "having answered 'yes' to those four [interrogatories], you then turn to the question—'Was the use of its property by the defendants unreasonable?'—and you will determine whether that was unreasonable or not based on the use of the property that you had determined existed by your answers to the other questions."

The defendants assert that in light of these statements, the trial court failed to inform the jury of the necessity of balancing the benefits of the activity against the harm complained of by the plaintiffs. Instead, according to the defendants, the instruction suggested to the jury that it should consider only the alleged harm in determining whether the defendants' use of the land was reasonable. As a consequence, the defendants claim that the need for the plant to control water pollution was not a factor before the jury in determining the reasonableness of the defendants' use of the land.

Moreover, the defendants contend that a proper instruction as to the unreasonable use element of a nuisance claim must include a balancing between the benefits or social utility of the plant for the health and welfare of town residents against the alleged harm suffered by the plaintiffs. Specifically, the defendants assert that "[w]here a town is undertaking an activity in furtherance of a state goal and pursuant to a state mandate, the charge to the jury should protect the town from liability for actions that are necessary to carry out the state's directives. Therefore, if the case is remanded . . . the charge [should] instruct the jury to find a nuisance based only on activities not part of the state mandate."

"In reviewing the defendant's claim, we adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 507, 481 A.2d 750 (1984). [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . *Holbrook* v. *Casazza*, 204 Conn. 336, 351–52, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219, 635 A.2d 798 (1994); *Siladi* v. *McNamara*, 164 Conn. 510, 515, 325 A.2d 277 (1973). We do not critically dissect the charge in order to discover possible inaccurate statements. *Amato* v. *Desenti*, 117 Conn. 612, 617, 169 A. 611 (1933). Rather, we see if [the jury instructions] gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 566, 562 A.2d 1100 (1989). As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury; *Kelley* v. *Bonney*, 221 Conn. 549, 584, 606 A.2d 693 (1992); we will not view the instructions as improper. Even if instructions are found to be improper, we must further determine whether they have been prejudicial to the claiming party by adversely affecting the trial's outcome. Id., 586 . . . ." (Citation omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 280–81, 640 A.2d 74 (1994).

An analysis of the defendants' claims requires us to review the contours of the unreasonable use element of a common-law private nuisance cause of action. As we previously have stated, " 'the law will not interfere with a use that is reasonable.' *Hurlbut* v. *McKone*, 55 Conn. 31, 42, 10 A. 164 [1887]. 'It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor.' *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548 [1933]. *A fair test of whether a proposed use constitutes a nuisance is 'the reasonableness of the use of the property in the particular locality under the circumstances of the case.' Wetstone* v. *Cantor*, 144 Conn. 77, 80, 127 A.2d 70 [1956]." (Emphasis added.) *Nicholson* v. *Connecticut Half-Way House, Inc.*, 153 Conn. 507, 510, 218 A.2d 383 (1966). The test of unreasonableness is "essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards." (Internal quotation marks omitted.) *O'Neill* v. *Carolina Freight Carriers Corp.*, 156 Conn. 613, 617–18, 244 A.2d 372 (1968), quoting 4 Restatement, Torts § 826, comment (b) (1939); see *Nair* v. *Thaw*, 156 Conn. 445, 452, 242 A.2d 757 (1968). In *Maykut* v. *Plasko*, 170 Conn. 310, 314, 365 A.2d 1114 (1976), we again referred to the weighing process described in the Restatement, in determining whether the trial court had applied the proper test to determine the reasonableness of the defendants' use of their land. We concluded that the trial court had applied the proper test where "[t]he facts outlined in [the] memorandum of decision and set out in the finding include a consideration not only of the interest of the plaintiff, but of the defendants also." Id., 315.

The charge to the jury in the present case was consistent with our prior holdings on the element of unreasonable use. When viewed in the context of the charge as

a whole, the jury instructions concerning unreasonable use conveyed to the jury that it was to take into consideration and weigh the conflicting interests involved. The trial court stated at the outset of the explanation of the unreasonable use element of the claim that the jury "*must consider the location of the condition and any other circumstances that you find proven which indicate whether the defendants [were] making a reasonable use of the property.*" (Emphasis added.) This statement indicates that the jury must take into account a multiplicity of factors. Reference to the fact that the use of the property for a plant is a reasonable use makes clear that the use of the defendants' land to operate a plant is reasonable *in and of itself*. By then noting that the determination of reasonableness is to be made in the context of odors produced by the plant, the trial court underscored that the weighing process for the jury to conduct is of the reasonableness of use *in light of the production of unreasonable odors* that the jury had determined existed in its answers to the first four interrogatories. We disagree with the defendants, therefore, that the effect of the jury instruction was to remove the interests of the defendants from the jury's consideration. Rather, we conclude that the trial court's charge provided a reasonably clear instruction that the jury must consider many factors in determining the reasonableness of use, including the reasonableness of use as a plant that creates certain odors in the course of its operation.

Moreover, the defendants' arguments regarding the impropriety of the jury instructions necessarily are unpersuasive because they are based on an inaccurate construction of the concept of unreasonable use. We begin by noting that the defendants' reliance upon the state mandate concerning water pollution control is misplaced. As discussed further in part III of this opinion, the fact that operating a plant is permissible, or even

necessary, on the land in question does not necessarily shield the defendants from liability for harm to the land of others that may result from that use. "A municipality which creates a nuisance causing damage to the land of another is not excused from liability on the ground that the act is lawful in itself if, under all the circumstances, it is unreasonable." *Cyr* v. *Brookfield*, 153 Conn. 261, 265, 216 A.2d 198 (1965). As a result, we reject the defendants' claim that "[w]here a town is undertaking an activity in furtherance of a state goal and pursuant to a state mandate, the charge to the jury should protect the town from liability for actions that are necessary to carry out the state's directives."

The defendants also place much emphasis on our prior statement in *Cyr* that "[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in § 822 [of the Restatement of Torts],[8] unless the utility of the actor's conduct outweighs the gravity of the harm." (Internal quotation marks omitted.) *Cyr* v. *Brookfield*, supra, 153 Conn. 265–66, quoting 4 Restatement, supra, § 826. On the basis of this statement, the defendants assert that the element of unreasonable use cannot be met in this case unless the harm to the plaintiffs outweighs the social utility of a plant, that is, the harm outweighs the benefit to the residents of the town as a whole. The comments in the Restatement (Second) of Torts on utility versus gravity of harm do not, however, support the interpretation asserted by the defendants. The Restatement (Second) provides the example that "[e]ven though the noise and smoke from a factory cannot feasibly be eliminated, the utility of the factory

---

[8] Section 822 of the Restatement (Second) of Torts now provides in relevant part: "One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is . . . (a) intentional and unreasonable . . . ."

is not weighed in the abstract. In a suit for damages, the legal utility of the activity may also be greatly reduced by the fact that the actor is operating the factory and producing the noise and smoke without compensating his neighbors for the harm done to them. The conduct for which the utility is being weighed includes both the general activity and what is done about its consequences." 4 Restatement (Second), Torts § 826, comment (e) (1979). The defendants' understanding of the balancing requirement does not involve simply the weighing of factors to determine reasonableness as the law requires.[9] Instead, application of the defendants' approach would result in an all-or-nothing scenario wherein the plaintiffs could never prove unreasonable use because their harm could never trump the undisputed need for a town plant. In other words, the plaintiffs would be expected to bear all of the harm without compensation for their damages, while receiving no greater benefits from the continued operation of the plant than any other resident of the town. Such an interpretation goes far beyond the necessary weighing process to be undertaken by the jury.

We conclude that the jury instructions were adequate to guide the jury properly in the determination of the issues.

---

[9] In a similar vein, the town also cites to 2 D. Wright & W. Ankerman, Connecticut Jury Instructions (4th Ed. 1993) § 544, p. 886, for the proposition that "[i]f there was nothing which the defendant could reasonably have done to guard against the danger, it cannot be held to have created a nuisance." This proposed instruction, and the case law from which it was generated, applies to claims of public nuisance wherein the condition or conduct complained of interfered with a right common to the general public. *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987). Without addressing the question of whether there was anything further that the town could have done to reduce or eliminate the production of odors, we simply note that such a requirement is irrelevant in the context of the present case.

## II

The defendants next claim that the trial court improperly refused to direct a verdict for them on the grounds of collateral estoppel. Specifically, the defendants contend that the nuisance claim was barred by collateral estoppel because: (1) the department previously had found that there was no "feasible and prudent alternative" use to which the defendants could put the land; (2) this finding is equivalent to a finding that the use was not "unreasonable"; and (3) one of the plaintiffs intervened in the department hearings in question but did not appeal its decision. We disagree.

The department's findings concerning the plant were the subject of litigation that previously had come before this court in *Water Pollution Control Authority* v. *Keeney*, supra, 234 Conn. 488. The pertinent findings were that "[i]n his final decision, the [commissioner] did not accept the hearing officer's proposed finding that the odors did not constitute unreasonable pollution under the act. The [commissioner], instead, determined that the testimony at the public hearing supported a finding of unreasonable pollution. The [commissioner] nevertheless issued the permit, with a condition addressing the odor problems, because there was no feasible and prudent alternative to the continued operation of the plant." Id., 491.

We begin by setting out the fundamental principles of collateral estoppel. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

litigated between the same parties in any future lawsuit. *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992). Also, the issue must have been fully and fairly litigated in the first action. *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988)." (Internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 116–17, 728 A.2d 1063 (1999), quoting *State* v. *McDowell*, 242 Conn. 648, 655, 699 A.2d 987 (1997).

We conclude that the issue of unreasonable use in the context of the private nuisance claim could not have been fully and fairly litigated in the course of the department's proceedings because, for purposes of collateral estoppel, it is not the same issue as that resolved by the department's determination that there was no feasible and prudent alternative to the operation of the plant. As we discussed in part I of this opinion, the defendants are incorrect in their assertion that, if the operation of the plant was authorized by the department, the defendants should be protected from liability for such operation. In a similar fashion, the defendants now claim that "the [department's] finding that there was no feasible and prudent alternative to the . . . plant means that the use of the town's land for the plant could not be an unreasonable use."

The determination of whether there is a feasible and prudent alternative to the continued operation of the plant is made pursuant to § 22a-19 (b), which provides that "the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and *no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long*

*as*, considering all relevant surrounding circumstances and factors, *there is a feasible and prudent alternative* consistent with the reasonable requirements of the public health, safety and welfare." (Emphasis added.)

In other words, § 22a-19 (b) explicitly provides that a permit will not be renewed in the face of unreasonable pollution *if there is a feasible and prudent alternative.* In this case, the commissioner determined that there was *no* feasible and prudent alternative to continued operation of the plant. The determination that there was no such alternative is not, however, preclusive of a concurrent finding that such operation nevertheless causes unreasonable pollution. Indeed, the commissioner in this instance concomitantly found that "the testimony at the public hearing supported a finding of unreasonable pollution." *Water Pollution Control Authority* v. *Keeney*, supra, 234 Conn. 491. Therefore, the commissioner's determination that there was no other feasible and prudent alternative does not resolve the question of whether the operation of the plant constituted unreasonable use for purposes of a private nuisance claim.

As a result, we are unpersuaded by the defendants' assertion that the issue of unreasonable use—as the concept relates to a common-law private nuisance cause of action—was fully and fairly litigated in the context of the department's decision on the defendants' application for renewal of a sewage discharge permit. Accordingly, we affirm the trial court's denial of the defendants' motion for a directed verdict on the grounds of collateral estoppel.

### III

The defendants' third claim is that the trial court improperly failed to dismiss the action because the defendants should be protected from common-law nuisance actions when they engage in conduct mandated

by law and approved by a department permit. This argument is without merit.

"As long ago as *Mootry* v. *Danbury*, 45 Conn. 550, 556 [1878], we said with regard to municipal liability for a nuisance causing damage to real property: 'A principle of universal application—that every man shall transact his lawful business in such a manner as to do no unnecessary injury to another—compels them to do what they are required to do in a proper manner. In other words, towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals. And if a nuisance is thus created, whereby another suffers damage, towns like individuals are responsible.' " *Cyr* v. *Brookfield*, supra, 153 Conn. 265.

In the present case, the defendants place great emphasis on the fact that they have been granted a permit from the department to operate the plant. We are also mindful that the operation of such plants generally is consistent with the state policy "to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state. . . ." General Statutes § 22a-1. That the defendants have been authorized to operate a plant does not, however, mean that they are therefore free from liability when, as the jury found in the present case, the operation of the plant created a private nuisance from which the plaintiffs suffered damages. Such a conclusion would conflict with the well settled conclusions of this court concerning municipal liability for private nuisances, as well as the plain language of § 22a-430-3 (d) (1) (B) of the Regulations of Connecticut State Agencies concerning water treatment permits, which unambiguously provides that "[t]he issuance of a permit

does not . . . authorize any injury to persons or property or invasion of other private rights . . . ." Accordingly, we affirm the trial court's dismissal of the defendants' motion to dismiss.

IV

The defendants' final claim is that the trial court improperly granted each of the four plaintiffs individually a set of peremptory challenges, despite the fact that, as married couples who jointly own the respective properties, they had a unity of interest under § 51-241[10] such that each couple should have been granted only one set of peremptory challenges. We disagree.

Prior to the selection of the jury, the defendants moved for a finding of a unity of interest among the plaintiffs on the grounds that the plaintiffs consisted of two married couples who live adjacent both to one another and to the plant, and their injuries arose from the same facts. The trial court responded that "[m]y interpretation of [§ 51-241], the unity of interest statute, is that it's solely within this court's discretion, and this court finds that these are separate injuries to separate plaintiffs and sixteen peremptory challenges will be accorded to the plaintiffs."

We begin by setting forth the standard of review applicable to a trial court's determination as to the number of peremptory challenges to be granted pursuant to § 51-241. Section 51-241 provides in relevant part that "[w]here the court determines a unity of interest exists, several plaintiffs or several defendants *may* be

---

[10] General Statutes § 51-241 provides: "Peremptory challenges in civil actions. On the trial of any civil action to a jury, each party may challenge peremptorily *three jurors*. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

considered as a single party for the purpose of making challenges, *or* the court *may* allow additional peremptory challenges and permit them to be exercised separately or jointly. . . ." (Emphasis added.) The decision of whether several plaintiffs or defendants will be considered a single party for the purpose of making challenges is, therefore, within the discretion of the trial court. See *Glass* v. *Peter Mitchell Construction Leasing & Developing Corp.*, 50 Conn. App. 539, 543, 718 A.2d 79, cert. granted, 247 Conn. 938, 723 A.2d 317 (1998); (appeal withdrawn July 6, 1999); *Beach* v. *Regional School District Number 13*, 42 Conn. App. 542, 549, 682 A.2d 118, cert. denied, 239 Conn. 939, 684 A.2d 710 (1996).

The defendants contend, however, that the proper scope of review to be applied under the circumstances of the present case is de novo because the trial court's determination was not a discretionary decision of whether to limit the number of peremptory challenges granted to parties with a unity of interest pursuant to § 51-241, but an interpretation of the meaning of the term "unity of interest" itself. We are unpersuaded.

In *Beach* v. *Regional School District Number 13*, supra, 42 Conn. App. 549, the Appellate Court in interpreting § 51-241, determined that "[t]he legislative history of [Public Acts 1993, No. 93-176] demonstrates that the decision of whether parties share a 'unity of interest' lies in the trial court's discretion." In that case, the Appellate Court concluded that "the trial court had sufficient evidence to hold that the individual defendants shared no unity of interest with each other. Consequently, the trial court did not abuse its discretion by ruling that each individual defendant should have three peremptory challenges." Id., 552. We agree with the Appellate Court's construction that under § 51-241, the trial court has discretion to determine the complete

question of whether several plaintiffs or several defendants will be considered a single party, that is, whether there is a unity of interest among them, and if there is, whether that unity of interest will trigger a limit on the number of peremptory challenges to be granted. It would be illogical to conclude that the trial court has discretion to limit the number of peremptory challenges where there is a unity of interest, but it has no discretion in determining the underlying question of whether such unity exists.

In the present case, the trial court understood that the determination concerning the number of peremptory challenges to be awarded was within its discretion, and it made a determination accordingly. Given that the case entailed allegations of unique and personal harm suffered by four distinct persons over a span of a number of years, we conclude that the trial court did not abuse its discretion in granting a set of peremptory challenges to each plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.