[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs in this action are the owners of four homes that are adjacent to or near the Strawberry Park Camp Ground which is located at 42 Pierce Road in Preston. The camp ground accommodates recreational vehicles and campers and is located on the east side of Pierce Road. The defendants are Hyman Biber and various entities that he owns and or controls including the Strawberry Park Camp Ground.
 I Procedural History
CT Page 2688
The plaintiffs brought a three count complaint. The first count alleges that property, some 80 acres on the west side of Pierce Road (excess land), is being used in a manner that violates the zoning regulations of the town by permitting the parking of cars, campers, establishing camp sites for campers for cookouts, campfires and related activities, horseback riding and volleyball. It is also used by day campers who use the camp ground facilities or attend festivals but do not stay over night. However, they use the park for events conducted there and park in the excess land area on the west side of Pierce Road.
The second count alleges that the activities on the west side of Pierce Road generate traffic, noise, trash and other activities that constitute a nuisance.
The third count alleges a violation of the zoning regulations in that the day campers are allowed on the premises to use the facilities. The defendants conduct entertainment in the form of music festivals which are open to the general public, which generates unreasonable and objectionable noise. Also, some camp sites are in violation of the zoning requirements. Finally, patrons are not adequately policed to prevent them from trespassing on nearby properties such as that which belongs to the plaintiffs.
The plaintiffs seek a permanent injunction prohibiting the defendants from continuing to violate the zoning regulations and they also seek money damages. The court has already ruled that they are not entitled to money damages for failure to present evidence of the same. The defendants filed an answer and several special defenses.
 II Facts
Strawberry Park is a resort destination camp ground located at 42 Pierce Road in the Town of Preston. Biber received a special exemption for a "recreation camp ground" from the Town of Preston Zoning Board of Appeals on May 23, 1973, and, following several months of construction, Strawberry Park opened on April 5, 1974. Since the time Strawberry Park opened, it has received a "camp ground permit" from the zoning enforcement officer for each camping season. When the park opened it had 95 camp sites with hookups and 9 tent sites which no longer exist. It now has 480 camp sites. The camp sites typically include a gravel pad, fire ring, a picnic table, road access and hookups to water, electricity and cable television. Many of the sites also include a sewer hookup. CT Page 2689
The park offers a full range of recreational activities and entertainment. During the camping season, multiple activities are available throughout the day on week days and entertainment includes karaoke. Entertainment on weekends can include bonfires, bingo, dances and music. Several time a year, the park presents music festivals. The bluegrass festival is an annual three day event that occurs on the first weekend in June. The Cajun/zydeco festival is also an annual three day event that occurs on the third weekend in May. There is also a country western weekend in September with live music similar to the other two festivals. Although the majority of campers at Strawberry Park stay over night at a camp site, the park does sell passes for the music festivals to outsiders. Aside from the fact that day campers do not stay overnight at a camp site, day campers can do every thing at Strawberry Park that campers staying overnight can do. Recreational vehicles park in a grassy area west of Pierce Road on critical intake days. These days occur during the peak camping season primarily on Fridays and Sundays. During those times the area west of Pierce Road serves as a staging area between check out time from noon to 2 p.m. and check in time from 3 p.m. on, providing waiting space for campers who are coming to and going from the park. In addition to parking, the properties west of Pierce Road are used for volleyball, kite flying, baby strolling, touch football, horseback riding and other accessory uses.
Day campers, who purchase day passes to make use of the park's facilities and activities, park west of Pierce Road and are registered as they come through the front gate.
The plaintiffs own properties that either adjoin Strawberry Park or lie across Pierce Road from Strawberry Park. Plaintiffs, Robert and Patricia Miskimen, acquired their property on October 22, 1993. Mrs. Miskimen grew up in a house on Pierce Road and she and Mr. Miskimen moved into their current house in 1994. Plaintiff, Douglas Liebel, acquired his property on August 26, 1999. He grew up in the same house. Plaintiff, Edward Wucik, acquired his property on October 31, 1996, where he and the plaintiff Theresa Izzarelli, now live. Although Mr. Wucik received a certificate of occupancy for his house on May 10, 1999, he did not move in until July of that year. Plaintiffs, Chester and Shirley Sajkowicz, acquired their property on August 10, 1971. Mr. Sajkowicz has lived on Pierce Road most of his life.
 III Discussion
A. First Count of the Complaint
CT Page 2690
The campground is within an R 80 zoning area, residential and operates under a special exception. Excess land on the west side of the street has no special exception.
The plaintiffs claim:
1. Defendants have used excess land as a campground in violation of town regulations;
2. Defendants park cars and recreational vehicles on the west side of the road;
3. Camp sites and cookouts and other activities take place illegally on the west side of the road;
4. Temporary shelters and tent have been erected on the west side of the road in violation of the regulations;
5. Horseback riding, trail riding and volleyball and other activities have taken place and are taking place on the west side of the road in violation of the town regulations;
6. Non-campers, that is outsiders, use the excess land for events conducted in the campground such as music festivals. All of such uses of the land is in violation of the zoning regulations and is an illegal use of the excess land on the west side of Pierce Road.
The plaintiffs claim that the value of their land has been reduced and that traffic, noise, trash and other acts have affected their use and enjoyment of their property rights. Plaintiffs claim they have no adequate remedy at law and seek an injunction to put a stop to these activities.
The plaintiffs argue that they have a right to bring this action without exhausting administrative remedies. Cummings v. Tripp,204 Conn. 67, 75 (1987).
The entity primarily responsible for the enforcement of the zoning ordinances in Connecticut is the local land use agency, typically planning and zoning commissions through its zoning enforcement officer.Schomer v. Shilepsky, 169 Conn. 186, 194 (1975). A proper party may bring an action against another property owner for private enforcement of violation of zoning ordinances, independent of and supplemental of any action taken by planning and zoning commissions. Cummings, 204 Conn. 79;Blum v. Lisbon Leasing Corporation, Inc., et al., 173 Conn. 175, 180
(1977). CT Page 2691
In the present case, the plaintiffs did not commence this action because of any orders issued by the ZEO or the ZBA in enforcing the zoning regulations. They commenced the action because the ZEO failed to enforce the zoning regulation. The plaintiffs testified that they have been complaining about the activities at Strawberry Park prior to the commencement of this action. Notwithstanding the complaints about all of the mailers raised in the action, the only enforcement action taken by the ZEO was the issuance of the cease and desist order in May, 2000. This cease and desist order is not applicable to the mailers involved in the present case. Therefore, because the town failed to address plaintiffs' complaints, the plaintiffs have commenced this action.
The zoning regulations require that properties in an R 80 residential district sought to be used for recreational campgrounds must be granted a special exemption permit. The zoning regulations at § 23-35, define a campground as land used "for the parking of camper units or the establishment of overnight living quarters, such as tents or other temporary shelters and primarily occupied by family groups engaged in travel, recreation of vacation. Also the regulations permit an accessory use for campers only not permitted as a principal use such as a grocery store and camper provisions and gifts, swimming pool, golf course, tennis, horseback riding and other activities, although some by their nature are performed off premises, but all activities must originate on premises. Any use that is not specifically permitted is illegal." Gada, etal v. Zoning Board of Appeals of the Town of East Lyme, 151 Conn. 48
(1963); Park Regional Corporation v. Town Plan Zoning Commission,144 Conn. 677, 682 (1958).
The activities conducted on the excess land by Biber have violated and will continue to violate the zoning regulations since that property had not been granted a special exemption permit to operate as a recreational campground. He did remove vacant campers as a result of a cease and desist order and he had constructed post and campfire rings and permitted persons to camp overnight in temporary shelters all of which activity has stopped. However, the use of excess land by properly registered campers and day campers recreational activities is a violation of the zoning regulations. Use of the excess land for parking of vehicles of day campers, for festival and overflow traffic during the check in process for campers on weekends violates the regulations.
An accessory use necessarily springs from properly permitted principal use and both uses must be conducted on the same property. Pursuant to town ordinance § 15.11.18, only those activities that "by their nature are performed off premises" and originate on the campground may be considered valid accessory uses. The daily use of the facilities without CT Page 2692 having overnight living quarters at the campgrounds is a completely different type of use than contemplated by § 23.35. In addition, to the extent that a musical festival is a valid accessory use for the campground under § 15.11.18, such uses may only be offered to campers registered at the campgrounds. Other uses of the property are not consistent and are illegal. Accordingly, day campers are an illegal activity.
The defendants claim that the plaintiffs have failed to satisfy the requirement for private litigants to enforce the zoning regulations because the injured party has a right to seek injunctive relief where the violation results in special damages to him. Therefore, if plaintiffs fail to prove that they suffered special damages as a result of the alleged zoning violations, they are not entitled to an injunction as a mailer of law. Granger v. A. Aiudi Sons, 60 Conn. App. 36, 45 (2000).
Damages are pecuniary compensation or indemnity which may be recovered by any person who has suffered loss, detriment or injury whether to his person, property or right through the unlawful act or omission or negligence of another. Special damages are damages which the law does not presume to have been the necessary and direct result of the injury complained of. McDonald v. Falco, 66 Conn. App. 508, 515 (2001). As evidence of damages in this case, the plaintiffs offered only the testimony and reports of their appraiser, James Blair. The court found that his evidence was speculative and granted the defendants' motion dismissing the plaintiffs' claim for monetary damages. Therefore, the claim for injunctive relief for the alleged zoning violations must fail. The defendant also claims that the uses west of Pierce Road did not violate the zoning regulations, first because many of them have ceased and the uses that continue do not violate the zoning regulations as testified by the ZEO. The parking of recreational vehicles, automobiles and recreational activities west of Pierce Road are valid accessory uses to a recreational campground. An accessory use is one that is dependant upon or that pertains to the principal use. Fox v. Zoning Board ofAppeals, 146 Conn. 70, 74 (1958). It must be incidental and related to the principal use. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 453
(1979).
The main principal and dominant use of Strawberry Park is a recreational campground. The accessory uses — parking and recreation — are subordinate to the recreational campground. Parking west of Pierce Road occurs during limited periods of time when space constraints in Strawberry Park cannot accommodate both campers, typically with recreational vehicles checking out of their camp sites and campers checking into them. There is also parking that occurs on a few weekends each year when campers register to enjoy music festivals and CT Page 2693 camping activity without camping overnight.
When actual instances of similar accessory uses on other property are considered, the uses should be more than unique or rare, taken into account geographical differences. Strawberry Park covers 77 acres and the property west of Pierce Road covers another 80 acres of low-density residential district. It would, therefore, be customary for parking and recreation users to be incidental to a campground and the defendants offered testimony that such uses commonly accompany campgrounds. Without Strawberry Park, the accessory uses would not occur. Therefore, the uses west of Pierce Road are valid accessory uses. The plaintiffs have also complained about horseback riding and trail riding. The testimony in the case was that the area where the riding takes place, lot 25-43, was a former Heather Hollow Farm, and that it and lot 7 has been used for horseback riding for many years. The zoning regulations from 1971 allowed horseback riding in all residential districts. Therefore, the equine uses are protected as nonconforming uses under the regulations.
Having reviewed the arguments of both parties with respect to count one, the court agrees with the defendant that the use of the land on the west side of the road is a valid accessory use and is not in violation of the regulations. The court will comment on the use of the west side of the road by day campers in its discussion of the third count.
B. Second Count
The second count alleges that use of the excess land has a natural tendency to create danger and inflict injury on the plaintiffs' properties and use and enjoyment of the same. The plaintiffs claim that as a result it is a nuisance and they are entitled to injunctive relief as a result.
The plaintiffs claim that such use is in violation of the zoning regulations and is dangerous and unlawful.
Activities that constitute a nuisance are those that have a natural tendency to create danger or inflict injury, are repeated and continuous, are unreasonable and unlawful and cause an injury in fact.Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 35-36 (1978).
The plaintiffs claim that the operation of the campground in its current fashion using the excess land has a natural tendency to create danger or inflict injury. The number of people attending the campground for overnight camping and for festivals has been increasing at an alarming rate in recent years and has overgrown its lawful boundaries to the injury of the plaintiffs. By utilizing excess land for parking, CT Page 2694 either for check in or for festivals, the increased number of people utilizing the campground and Pierce Road creates a dangerous condition. The noise from nightly events such as karaoke and that of the festivals has been increasing. Two of the plaintiffs have testified that the music volume has been increasing. The noise is so loud that it rattles the windows of the Wucik residence and forces the Miskimens to stay inside and close their windows. Where a noise source is so loud and abusive it is a nuisance to nearby property owners. Tomasso Brothers, Inc. v.October Twenty-Four, Inc., 230 Conn. 641, 647 (1994). There has also been increased traffic along Pierce Road. Traffic can be backed up numerous car lengths, sometimes more than a quarter mile down the road. When this happens, it creates significant inconvenience and safety issues for the Miskimen's and Sajkowicz's and is a dangerous condition. In addition to the noise and traffic, littering and other acts by campground patrons are a nuisance to the plaintiffs.
With respect to the second count the defendants argue that the use of the properties west of Pierce Road do not constitute a nuisance.
The case of Pestey v. Cushman, 259 Conn. 345 (February 5, 2002) redefines the law of private nuisance.
The Supreme Court in Pestey, reviewed the law of nuisance. It stated that the law has been that the plaintiff in a nuisance claim must prove four elements: "(1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiff's injuries and damages. (Internal quotation marks ommitted.)" Pestey, supra, at 355, quoting Walsh v. Stonington WaterPollution Control Authority, 250 Conn. 443, 449 (1999). The foregoing test has been applied to both private and public nuisance cases. The court noted that a private nuisance, as opposed to a public nuisance, is concerned with an individual's private right of use and enjoyment of his or her land. Therefore, the court held that the traditional requirement of showing that the defendant's actions had a natural tendency to create a continuing danger is and can be irrelevant to a private nuisance claim. Because of these differences between private and public nuisance, the court has now created a new test for a private nuisance claim. The court adopted the test as established in the Restatement of Torts, Second, in which the elements of a private nuisance claim are made to be: (1) an invasion of the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the invasion; and (3) the invasion was either intentional and unreasonable, or unintentional and the defendant's conduct was negligent or reckless." Under the third element of this test, which is in issue in Pestey, a CT Page 2695 defendant's conduct in the use of his property can be reasonable, but can still be a nuisance since it "unreasonably interferes with the use of property by another person. " "[While] the reasonableness of a defendant's conduct is a factor in determining whether an interference is unreasonable, it is not an independent element that must be proven in order to prevail in all private nuisance causes of action. " Pestey, supra at 361. The final question, then, is whether the defendant's conduct interferes with the plaintiff's use and enjoyment of his property, not whether the defendant's conduct was inherently unreasonable.
The defendants claim that of the activities on the properties west of Pierce Road are reasonable. They suggest that parking and recreational activities are reasonable. Parking west of Pierce Road is necessary to handle the overflow of vehicles. Without this parking, the road would be congested during those times. The defendants aver that people of reasonable sensibilities would not find occasional parking and outdoor recreational activities to be objectionable. Although the relief the plaintiffs seek would provide them with an increment of quiet and privacy beyond what they already enjoy, it would have a significant adverse impact on the operation of Strawberry Park and on the safety of Pierce Road. Upon balancing the conflict of interests, the uses of defendants' properties west of Pierce Road should continue because they are reasonable under the circumstance. Finally, a court will not grant relief unless the activity would constitute a nuisance to the person of ordinary sensibilities; it will not aide a hyper-sensitive plaintiff, Jack v.Torrant, 136 Conn. 414 (1950).
The defendants, therefore, aver that the plaintiffs have failed to prove that they have suffered significant harm from the activities west of Pierce Road. Their testimony amounts to a dislike of seeing recreational activities, recreational vehicles and automobiles west of Pierce Road along with a misplaced concern for the safety of campers who walk and push strollers along the road. In short, the defendants claim the plaintiffs have not proven the elements of a nuisance claim.
The court, having reviewed the arguments of both parties, finds that the plaintiffs have failed to establish a claim of nuisance. The court also finds that the factors to be considered include: 1) the gravity of the harm to the plaintiff; 2) the value of the defendant's activity to the community; 3) the burden that will be placed upon the defendant if a particular remedy is granted; and 4) whether the defendant's activity was in progress when the plaintiff arrived at the locality, that is, whether the plaintiff moved to the nuisance. The Connecticut Supreme Court recently recognized the authority of Pope's treatise. (I D Pope, Connecticut Actions and Remedies, Tort Law (1993) § 9.07, p. 9-15.) Citing the case of Gannon v. Smith Wesson Corp., 258 Conn. 313, 369
CT Page 2696 (2001). The court, accordingly must find that any harm to the plaintiffs was insubstantial. The activities west of Pierce Road are necessary for the safe and successful operation of Strawberry Park. The elimination of the parking west of Pierce Road would undermine the safety and efficiency of the check in and check out process. The Miskimens came to the alleged nuisance in the form of a horse trail near their property boundary. They knew about the horse trail before they built their house. Because they moved to the alleged nuisance, they are not entitled to an injunction restraining horseback riding west of Pierce Road.
The court finds that because of all of these factors, the plaintiffs are not entitled to an injunction on the grounds of nuisance.
C. Third Count
The third count alleges that the defendant's use of the campground is in violation of the zoning laws in that:
1. The camp ground is open to those not primarily using the campground as campers as required by § 23.26 of the zoning regulations that is, as a camp site.
2. The defendants' conducting of entertainment open to the public is contrary to § 15.11 and 23.35 of the zoning regulations.
3. Noise from the entertainment is so loud as to interfere with the plaintiffs' use of their land.
4. There are certain camp sites that violate the proper regulations of § 15.11.
5. The defendants have failed to control patrons and guests from trespassing on plaintiffs' property. The plaintiffs claim they have no remedy of law and seek injunctive relief.
The plaintiffs argue that allowing day campers to utilize the campground facilities violates the town zoning regulations. Regulations at 23.35 provide that the campgrounds are to be used "for the parking of camper units or the establishing of overnight living quarters such as tents or other temporary shelters, and primarily occupied by family groups engaged in travel, recreation or vacation. The defendants admit they allow persons to use the campground facilities on a per day basis. There are special events and an increasing number of outsiders, that is, non-regular campers, use the facility on day-to-day basis which is a completely different type of use than contemplated by the regulations. In addition, to the extent that a music festival is a valid accessory use CT Page 2697 for a recreational campground under § 15.11.18, such uses may be only offered to campers registered at the campground. Where outsiders are invited, this is not consistent with the definition in § 23.35 and is an illegal violation of the record of the regulations.
The plaintiffs also complain that § 15.11.19 requires no objectionable noise be emitted from any campground. According to the testimony of Sajkowicz, musical concerts held at the park over the years have gotten significantly louder over the past three years. The music gets so loud over the summer that he must close his windows. Wucik can hear such objectionable noise through this closed windows and over the noise generated by his air conditioner. He says that sometimes the music is so loud that it would make his windows rattle much like riding next to a car with its sound system blaring. The plaintiffs produced a sound expert who testified that a significant amount of sound was leaving the campground. Indeed, he registered meter readings of 66-68 decibels.
As a result, the plaintiffs claim that the noise emitted off of the campground was a violation of the regulations. The plaintiffs claim also that certain camp sites require a 50 foot buffer along the campground property and that this buffer does not exist. It was also claimed that campers have trespassed on plaintiffs' properties, have thrown trash, rubbish and beer cans and interfered with the plaintiffs' use of the property by committing various acts of vandalism and leaving rubbish on the property.
The Miskimen's also complained that groups of horseback riders come 10-15
feet from their property line 8 or 10 times a day during the summer months and that the volleyball players and other sports can be loud and disruptive to them.
The defendants argue that the zoning regulations define a recreational campground, but not the definition of a camper. The zoning regulations do not define a camper. However, Strawberry Park meets the definition of a recreational campground in accordance with the definitions.
Defendants claim that nothing in the definitions excludes some campers from registering to enjoy facilities and activities at the park without staying overnight so long as these campers are not the primary occupants of the campground. The defendants also claim that they do not open the facilities and activities to the "general public." Rather for a fee, campers may register and enjoy music festivals without staying overnight. These are the so-called day campers. The defendants claim that reading § 15.11.18 in conjunction with § 23.35, that this leads to the conclusion that day campers, fewer in number, than overnight campers may enjoy entertainment at the park including musical CT Page 2698 entertainment. The defendant claims that the park is not a music theater and music festivals or concerts are subordinate to the principal campground use and only occur a few times a year. The defendant also claims that the issue of outside campers who do not stay overnight has risen twice outside the context of this action. Recently, the ZEO issued a cease and desist order on April 25, 2001 explaining that music festivals "are not in accordance with the zoning regulations if they are open to the public regardless of whether there are more than 500 people in attendance" and concluding that "campers may enjoy concerts but ticket sales to others is not accepted." The defendants appealed the cease and desist order to the Preston Zoning Board of Appeals. Following a hearing, the ZBA voted on August 13, 2001 to rescind the cease and desist order. The plaintiffs have appealed the decision of the ZBA to the Superior Court, and the appeal is pending in the action Miskimen, et alv. Town of Preston Zoning Board of Appeals, et al, (Docket No. CV-01-0123420 S). The defendants suggest that this court permit the issue to be resolved in that action rather than in the present action.
The court has reviewed the appeal from the ZBA and finds that it has a return date of October 2, 2001 with no pleadings filed. Since the issues are the same as in the instant case, the court finds that there is no reason to defer to that case as the decision in this case will make that case moot.
There was supposedly an agreement in 1978 that outsiders could attend the festival so long as no more than 500 outsiders did so. Although an agreement was drawn up, the agreement was never signed. Accordingly, the April 25, 2001 cease and desist order was granted in response to promptings by the plaintiffs and an opinion from the town attorney. The defendants ask that this court recognize the 1978 agreement as a fair resolution of a debatable point and allow the defendants to admit up to 500 non-overnight campers to music festivals and concerts.
The court finds that the so-called agreement was never signed or followed. Although Biber claims no more than 500 outsiders attended the music festivals, the records show that on several days 600-800 tickets were sold to people that were not campers. Biber claims his losses should be considered in evaluating the violation of the ordinance. The court recognizes that if he is ordered to cease selling tickets to outsiders, in violation of the zoning regulations, to music festivals and concerts, his financial losses will be heavy. However, the solution is not to permit him to violate the zoning regulations, but for him to make a proper application for a special permit to give musical concerts and festivals.
The defendants also argue that the noise from the entertainment does not violate the zoning regulations. Section 15.11.19 of the regulations CT Page 2699 states: "the volume of sound from music and public address system shall be so controlled as to prevent objectionable noise off the premises.
The question is not whether the noise interferes with the plaintiffs' use of their properties because the ZEO has discretion concerning enforcement of the regulations. The standard for objectionable noise must be subject to the rule of reason rather than the determination of a particular neighbor that the noise is subjectively objectionable. The defendants claim that although several plaintiffs claim that the noise was unreasonably loud, various witnesses produced by the defendants testified that the music was not too loud and in some cases was so soft that customers complained they could not hear it. Defendants also produced Alan Smardin and expert in acoustics who measured noise levels on May 19, 2000 from 8:30 pm to 10:00 pm and found that the music levels complied with applicable state standards. On the other hand, measurements by two of the plaintiffs found that it was too loud. Defendants claim that the instrument the plaintiffs used is not the proper one. Finally, the defendants claim that the campsite does not violate the proper setback requirement. They note that the plaintiffs identify camp site numbers 72-80 and 130-133 is violating proper setback requirements. Such camp sites 72-80 were constructed in 1973 and 130 to 133 in 1974. When these were constructed, the zoning regulations contained no buffer requirement. The buffer requirement did not come into effect until August, 1975 after the camp site had been constructed.
Accordingly, they are protected as nonconformities with respect to the 50-foot landscaped buffer requirement.
Finally, the defendants claim that there is nothing in the zoning regulations that imposes a duty on the campground to police and control the activities of campers outside the campground. The court agrees with the defendants and so finds.
 The Court's Findings
The court finds that the zoning regulations §§ 23.35 and 15.11.18 do not contemplate day campers or members of the general public to come and buy tickets for music festivals. The records show that on some days as many as 600 to 800 people attend the festivals who are not registered campers. Day campers also cause overflow traffic and park on the excess land, west of Pierce Road. The court finds this use of the excess land is not an appropriate use and is in violation of the zoning regulations. The court also is of the opinion that the so-called 1978 agreement to allow up to 500 non campers to attend music festivals was never signed. The court believes the issue of sales of tickets to non-campers for music festivals clearly violates the zoning regulations. CT Page 2700
Special Defenses
The defendants have alleged two special defenses which they pursued in their brief.
The first claim is that the doctrine of unclean hands bars Sajkowicz from injunctive relief because on one occasion he stopped people on Pierce Road on their way to Strawberry Park and ordered them to go home and stay away from Strawberry Park. This occurred on only one occasion over a period of several years and involves only one of several plaintiffs. The court finds this claim frivolous and denies this affirmative defense.
The second special defense claims the plaintiffs are barred from relief because of the doctrine of laches. The defense comprises two elements: 1) a delay that was inexcusable; and 2) a delay that prejudiced the defendant. The court finds that the plaintiffs all moved into their houses between 1978 and 1994. During that time they urged town officials to correct the problem without success. Things got progressively worse during the three years prior to the lawsuit, which was brought in November of the year 2000. The delay was not inexcusable. The delay was not harmful to Biber. He was able to continue his illegal activities beyond what he could have done had suit been brought earlier.
Regarding the noise issue, Zoning Regulation § 15.11.19 requires that no objectionable noise be emitted from any campground. Sajkowicz testified the music has gotten louder over the last three years. The court is of the opinion that the noise level has exceeded permissible limits, despite Biber's claim that it has not. It is a fact of life that people who like music never find it loud enough. Those who dislike it always find it too loud. However, the regulation that no objectionable noise be emitted from the campground can be enforced by the ZEO.
Accordingly, this court rules that the defendant cease and desist from any noise level that violates the regulation as determined by the ZEO, whose duty it is to enforce this injunction.
Regarding the claims that certain campsites violate the buffer zones, the court agrees with the defendants that the campsites are not in violation of the zoning regulations because the regulation came into effect after the campsites were constructed. Hence, they are permitted as nonconforming uses.
The court also finds that the defendants have no duty to control the activities of campers off the campgrounds. CT Page 2701
 Conclusion
The court, therefore, finds that the music festivals are not in accordance with the zoning regulations since they are open to the public, regardless of whether there are more than 500 people in attendance, who are not regular campers. Sale of any tickets to people other than campers is not acceptable. Accordingly, Biber is enjoined from such activity unless and until he obtains a special permit from the town to present concerts and musical festivals.
The court also issues an injunction ordering the defendants to cease from causing objectionable noise pursuant to Zoning Regulations § 15.11.19.
All other issues are resolved as stated earlier in this opinion.
D. Michael Hurley Judge Trial Referee
CT Page 2701