******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

GREGG FISK *v.* TOWN OF REDDING ET AL.
(AC 40216)

Sheldon, Elgo and Flynn, Js.*

*Syllabus*

The plaintiff, who had sustained injuries when he fell off of a municipal
    retaining wall, sought to recover damages for absolute public nuisance
    from the defendant town of Redding. He claimed that the town had
    created a nuisance by constructing the retaining wall without a fence
    on top of it, which thereby resulted in his fall and injuries. Following
    a trial, the jury returned a verdict in favor of the town, which the trial
    court accepted and recorded. Thereafter, the plaintiff filed a motion to
    set aside the verdict, claiming that the jury's responses to the first and
    third interrogatories, in which it found that the wall was an inherently
    dangerous condition but was not an unreasonable or unlawful use of the
    land, were inconsistent. The trial court denied the motion and rendered
    judgment in accordance with the verdict, from which the plaintiff
    appealed to this court. *Held*:

1. The trial court abused its discretion in denying the plaintiff's motion to
    set aside the verdict, as the jury's answers to the special interrogatories
    in the verdict form were inconsistent and could not be harmonized: the
    jury could not have determined that the alleged inherently dangerous
    condition, the retaining wall without a fence, was both inherently danger-
    ous and not an unreasonable use of the land, as there was no scenario
    under which the jury reasonably could have determined, after concluding
    that the retaining wall without a fence was inherently dangerous, that
    the fact that the retaining wall lacked a fence served any utility to
    either the town or the community, or that a weighing of all relevant
    circumstances could make the use of the land for an unfenced wall that
    is inherently dangerous and lacks any utility, reasonable, and, thus,
    the jury's response to the first interrogatory, that the condition was
    inherently dangerous, was fatally inconsistent with its response to the
    third interrogatory, that the town's use of the land was not unreasonable;
    furthermore, the trial court did not attempt to harmonize the jury's
    inconsistent answers to interrogatories by ordering the jury to return
    to continue its deliberations and to consider its verdict in light of the
    obvious inconsistency.

2. The plaintiff could not prevail on his claim that the trial court erred in
    excluding evidence that following his accident, the town installed a
    fence, which was based on his claim that evidence of the remedial repair
    was admissible because the town did not voluntarily install the fence
    but, rather, did so at the direction of the Department of Transportation;
    under the applicable provision of the Connecticut Code of Evidence
    (§ 4-7 [a]), evidence of measures taken after an event, which if taken
    before the event would have made injury or damage less likely to result,
    is inadmissible to prove negligence or culpable conduct in connection
    with the event, the reasons behind that rule make clear that voluntariness
    is not a factor, and although the plaintiff alleged that the evidence of
    the subsequent fence was relevant to the jury's determination of inherent
    danger and proximate cause, the evidence of remedial measures was
    inadmissible to prove the town's liability for nuisance.

(*One judge concurring in part and dissenting in part*)

Argued November 14, 2018—officially released May 21, 2019

*Procedural History*

Action to recover damages for public nuisance,
brought to the Superior Court in the judicial district of
Fairfield, where the court, *Kamp, J.*, granted the named
defendant's motion to preclude certain evidence; there-
after, the matter was tried to the jury; verdict for the
named defendant; subsequently, the court denied the
plaintiff's motions to set aside the verdict and for a new

trial, and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Reversed*; *new trial.*

*A. Reynolds Gordon*, with whom was *Frank A. DeNicola, Jr.*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was *Beatrice S. Jordan*, for the appellee (named defendant).

*Opinion*

FLYNN, J. The plaintiff, Gregg Fisk, appeals from the judgment of the trial court rendered on a jury verdict in favor of the defendant town of Redding.[1] On appeal, the plaintiff claims that the court erred in (1) denying his motion to set aside the verdict and (2) excluding evidence of subsequent remedial measures. We agree with the plaintiff's first claim but disagree with the second.

The record reveals the following facts. A retaining wall was constructed as part of the defendant's "Streetscape Project." The project was funded by federal and state grants, and the state Department of Transportation (department) supervised the construction. The department's design engineer supervisor approved the construction of a five foot retaining wall without a fence.[2] During the construction phase of the project, field conditions existed that necessitated the height of the retaining wall to become taller than five feet, as the driveway below it sloped downward. A wooden barrier in the style of a Merritt Parkway guardrail was installed several feet in distance from the retaining wall with dense landscaping behind it.

The retaining wall was adjacent to the parking lot of the Lumberyard Pub. On the evening of August 26, 2011, at approximately 8:30 p.m., the plaintiff went to the Lumberyard Pub for dinner and drinks. The plaintiff left at approximately 2 a.m., after consuming approximately five beers. In order to reach Main Street by a shortcut, the plaintiff climbed over the guardrail and stepped off the retaining wall. While traversing the unfenced retaining wall, the plaintiff fell and injured his left leg and ankle in many places.

The plaintiff brought an action against the defendant sounding in absolute public nuisance and alleging that he was injured when he fell off an unfenced retaining wall that had a nearly six foot drop to Main Street below.[3] The defendant filed an answer and special defenses, alleging, inter alia, assumption of the risk and recklessness. Following trial, the jury returned a verdict for the defendant, which the court, *Kamp, J.*, accepted and recorded. Thereafter, the plaintiff filed a motion to set aside the verdict, and the court issued a memorandum of decision denying the motion. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court erred when it denied his motion to set aside the verdict because the jury's answers to the special interrogatories in the verdict form were inconsistent. We agree.

The following additional facts are relevant to this claim. The court charged the jury, prior to deliberations, in part, as follows: "First, the plaintiff must prove that

the retaining wall was inherently dangerous . . . that it had a natural tendency to create danger and to inflict injury upon person or property. It is the condition itself which must have a natural tendency to create danger and inflict injury. You, as the trier of fact, must consider all of the circumstances involved in determining whether . . . the condition in that particular location had a natural tendency to create danger and inflict injury. Second, the plaintiff must prove that the danger was a continuing one. . . . Third, the plaintiff must prove that the use of the land, in this case the retaining wall, was unreasonable or unlawful. In making a determination concerning the reasonableness of the use of the land, all the surrounding factors must be considered. Fourth, the plaintiff must prove that the condition interferes with a right common to the general public. . . . If you find that the plaintiff has proven the above elements of a public nuisance, next the plaintiff must prove that the nuisance was a proximate cause of the injuries suffered by [the plaintiff]." In explaining how to proceed with the verdict forms and jury interrogatories, the court stated: "[F]or example, you respond to question one. If you answer no, as the instructions indicate, you must return a verdict for the defendant, and you would fill out the defendant's verdict form and that would end your deliberations. If you answer number one yes, as the instructions indicate, then you go on to question two, and you answer that question. After question two, if you were to answer that question no, then you would return a verdict for the defendant using the defendant's verdict form. If you answer yes, you continue to number three. And you continue through the process until you've reached your verdict either using one or the other of the verdict forms. You necessarily also have to complete the jury interrogatories at least completely or to where you stop if you answer a question no." The court did not further explicate interrogatories six and seven, which asked the jury to render special verdicts as to whether the defendant had proved its special defenses of recklessness and assumption of the risk.

Following the final charge of the court to the jury, the court submitted seven interrogatories to the jury, with the first and third as follows: "1. Has Plaintiff proven to you, by a preponderance of the evidence, that the condition complained of, the subject retaining wall was inherently dangerous in that it had a natural tendency to inflict injury on person or property? . . . 3. Has Plaintiff proven to you, by a preponderance of the evidence, that the Defendant's use of the land was unreasonable or unlawful?"[4] During deliberations, the jury presented the following question to the court: "If we are not all in agreement on questions one and two but are on question three, are we able to rule in favor of the defendant?" (Emphasis omitted.) Thereafter, counsel discussed the issue with the court outside the presence of the jury, and the plaintiff's attorney stated:

"If some of them are saying that the wall was . . . inherently dangerous and the danger was continuing, then that means that it has to be unreasonable." The court did not agree and stated that the "law requires that you, on behalf of your client, prove all four elements, and if you can't prove each element then there's a defendant's verdict." The plaintiff's counsel explained, "we don't abandon our position," to which the court responded, "of course you don't because you're going to write about this on appeal." The plaintiff's counsel specifically took an exception to "the omission of the words 'without a fence' after 'retaining wall' " in the court's charge to the jury. He also had preserved the issue in the plaintiff's request to charge, dated July 25, 2016, which suggested that the court charged the jury that "[t]he plaintiff must prove that the retaining wall without a fence had a natural tendency to create danger and to inflict injury upon person or property." (Internal quotation marks omitted.)

Following the colloquy with counsel, the court responded to the jury's question as follows: "Ladies and gentlemen, I instructed you on the law and you have my charge as a court exhibit. And the plaintiff has the burden of proof, as I indicated in my charge, to prove essentially four elements of an absolute public nuisance . . . . If the jury can unanimously . . . agree that the plaintiff has not proven one of those four elements and you can agree upon that, and in this case if it's number three and you so indicate on your jury verdict interrogatories and you check that unanimously in the negative, then you . . . can return a verdict in . . . favor of the defendant. But you must all unanimously agree that [the plaintiff] has not proven one element of the cause of action."

Following deliberations, the jury responded in the affirmative to jury interrogatories one and two and in the negative to the third jury interrogatory. The plaintiff moved to set aside the defendant's verdict, arguing that the jury's responses to the first and third interrogatories, in which it found that the wall was an inherently dangerous condition but was not an unreasonable or unlawful use of the land, were inconsistent. The court denied the motion, reasoning that the "jury's responses to the interrogatories were not inconsistent because there was evidence that allowed the jury to determine that, although the wall was unreasonably dangerous, it was not an unreasonable use of the land."

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse

to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 160 Conn. App. 798, 803, 126 A.3d 598, cert. denied, 320 Conn. 908, 128 A.3d 953 (2015).

"When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 280, 698 A.2d 838 (1997). The plaintiff pleaded that the nuisance was absolute. "[I]n order to prevail on a claim of nuisance, a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was [a] proximate cause of the [plaintiff's] injuries and damages. . . . [W]here absolute public nuisance is alleged, the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public . . . and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance." (Citations omitted; internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987).

"Whether an interference is unreasonable in the public nuisance context depends . . . on (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . . The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake." (Internal quotation marks omitted.) *Kumah* v. *Brown*, supra, 160 Conn. App. 805. "The test of unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards."[5] (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 456, 736 A.2d 811 (1999), citing 4 Restatement, Torts § 826, comment (b) (1939). One of those factors is utility. "Reasonableness in the nuisance context weighs the utility of the interference with the public right against the degree or severity of the interference. See 4 Restatement (Second), Torts § 826, p. 119 (1979) ('[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable if

. . . the gravity of the harm outweighs the utility of the actor's conduct'); see also 58 Am. Jur. 2d 632–33, Nuisances § 79 (2012) ('the court must balance the gravity of the harm to the plaintiff against the utility of the defendant's conduct both to the defendant and to the community'). Such considerations are germane to deciding whether an interference with public safety is significant." *Kumah* v. *Brown*, supra, 806 n.6.

In *Kumah* v. *Brown*, supra, 160 Conn. App. 798, the plaintiff driver collided with a fire truck that had been positioned diagonally across Interstate 95 in response to a tractor trailer that had rolled over and was leaking diesel fuel. Id., 800–801. The plaintiff driver brought an action sounding in negligence and public nuisance. Id., 801. The plaintiffs argued on appeal that "the court erred in failing to set aside the jury's verdict because the jury's finding that the defendant was negligent was inconsistent with its express finding that the defendant's use of the land was not unreasonable." Id., 802. This court concluded that "[i]t does not follow that simply because the jury found, as to one or more of the alleged acts or omissions, that the defendant had breached its duty to act as an ordinarily prudent person, it then necessarily had to find that the defendant's use of the land was unreasonable in the circumstances." Id., 804. This court further concluded: "The jury could have found, for example, that a reasonably prudent town would have added more traffic cones or placed them differently, but that it was not unreasonable overall, given the emergency, for the town to interfere with the public's access to the highway generally by placing the fire truck in front of the disabled tractor trailer and generally guarding the scene. The interrogatories were not necessarily inconsistent; therefore, the court did not abuse its discretion in denying the plaintiffs' motion to set aside the verdict." (Footnote omitted.) Id., 806–807.

We are presented with the question of whether the jury's response to the first interrogatory, that the condition was inherently dangerous, is fatally inconsistent with its response to the third interrogatory, that the defendant's use of the land was not unreasonable.[6] In his complaint, the plaintiff alleged that the defendant constructed a retaining wall that had a precipitous drop of approximately six feet and was not fenced. The plaintiff claims that the wall was inherently dangerous, constituted a public nuisance, and that he injured himself when he fell off the retaining wall. The issue in this case, as it was tried and argued below, was not whether the defendant could build a wall, but whether it could erect an unfenced wall, without thereby creating a public nuisance. In analogous settings, such as highway defect or premises liability cases, where a particular defect must be proved, what must be established is not a condition that might give rise to the defect, but the existence of the very defect that caused the injury, such

as a pothole in a highway or a broken stair on someone's premises. See, e.g., *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 49 A.3d 951 (2012). In the present case, the condition which the plaintiff claims to have constituted a nuisance was the retaining wall *without a fence*.

The court instructed the jury on the "reasonable use" element of public nuisance that it was to consider "all the surrounding factors." Although there was evidence of landscaping and a Merritt Parkway style barrier several feet from the approximately five foot tall wall, the jury nonetheless found the wall to be inherently dangerous. Evidence that the plaintiff was intoxicated, wore flip-flops, walked over the Merritt Parkway barrier and jumped off the wall, does not pertain to the question in the third interrogatory as to whether the *defendant's* use of the land was reasonable. "[T]he only practical distinction between an absolute nuisance and one grounded in negligence is that contributory negligence is not a defense to the former but may be as to the latter." (Internal quotation marks omitted.) *Quinnett* v. *Newman*, 213 Conn. 343, 349, 568 A.2d 786 (1990), overruled on other grounds by *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003). That evidence might well pertain to the defendant's special defenses of recklessness and assumption of the risk, but the jury did not reach those issues. The issue of utility comes into play logically, not about whether the wall itself had some use to hold back the earth, but whether there was any useful public purpose to erecting the wall without a fence atop it, which is the very defect that the plaintiff, in his complaint, supporting evidence, and argument to the jury, claims to have been the nuisance that proximately caused his injuries. In this case, as a matter of law, the jury could not have determined that the retaining wall without a fence was both inherently dangerous and not an unreasonable use of the land. A wall with or without a fence has the same capacity to hold back earth. The condition at issue is not the wall itself or the Streetscape Project, but the wall without a fence atop it. The inherently dangerous condition of the wall without a fence has no utility to stabilize soil. In *Kumah*, a jury reasonably could have found that the fire truck placed diagonally across an interstate was not an unreasonable use of the land given the utility of the fire truck in the emergency situation. See *Kumah* v. *Brown*, supra, 160 Conn. App. 806–807. In the present case, there is no scenario under which the jury reasonably could have determined, after concluding that the retaining wall without a fence was inherently dangerous, that the fact that the retaining wall lacked a fence served any utility to either the defendant or the community, or that a weighing of all relevant circumstances could make the use of the land for an unfenced wall that is inherently dangerous and lacks any utility, reasonable. Under the circumstances of this case, the jury's answers to inter-

rogatories one and three are inconsistent. In *Bilodeau* v. *Bristol*, 38 Conn. App. 447, 455, 661 A.2d 1049, cert. denied, 235 Conn. 906, 665 A.2d 899 (1995), this court noted that in attempting to harmonize the jury's inconsistent answers to interrogatories, a court may, as dictated by caution, return the jury to consider its verdict in light of the obvious inconsistency. See also *Rendahl* v. *Peluso*, 173 Conn. App. 66, 95, 162 A.3d 1 (2017) ("[a] trial court may decline to accept a verdict and return the jury to continue its deliberations when the verdict form or accompanying interrogatories, if any . . . are legally inconsistent"). The trial court did not do so in this instance. Because the jury's answers are inconsistent and cannot be harmonized, we conclude that the court abused its discretion in denying the plaintiff's motion to set aside the verdict. "A verdict that is inconsistent or ambiguous should be set aside." *Kregos* v. *Stone*, 88 Conn. App. 459, 470, 872 A.2d 901, cert. denied, 275 Conn. 901, 882 A.2d 672 (2005).

## II

The plaintiff next claims that the court erred in excluding evidence that following the plaintiff's accident, the defendant installed a fence.[7] The plaintiff argues that evidence of the remedial repair is admissible because the defendant did not voluntarily install the fence but, rather, did so at the direction of the department. We disagree.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 489, 958 A.2d 1195 (2008).

Section 4-7 (a) of the Connecticut Code of Evidence provides: "[E]vidence of measures taken after an event, which if taken before the event would have made injury or damage less likely to result, is inadmissible to prove negligence or culpable conduct in connection with the event. Evidence of those measures is admissible when offered to prove controverted issues such as ownership, control or feasibility of precautionary measures." Section 4-7, "which is an exception to the general rule of admissibility of relevant evidence . . . reflects the settled rule in this [s]tate that evidence of subsequent repairs is inadmissible to prove negligence or [as] an admission of negligence at the time of the accident. . . . [S]uch evidence is likely to be of relatively minor probative value. . . . A broad exclusionary rule prohibiting the use of such evidence to prove negligence [or culpable conduct] therefore fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence, even though it requires the plaintiff to make a case without the use of evidence of the subsequent repairs. . . .

[E]vidence of subsequent remedial measures may be introduced when the party seeking to introduce the evidence can demonstrate that it is not being used as evidence of negligence but is instead offered to prove another material issue." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 13–15, 60 A.3d 222 (2013).

The plaintiff stated in his brief that the evidence of the subsequent fence was relevant to the jury's determination of inherent danger and proximate cause. Section 4-7 of the Connecticut Code of Evidence, and the reasons behind the rule, make clear that voluntariness is not a factor, and that evidence of remedial measures is inadmissible to prove the defendant's liability for nuisance. Accordingly, we conclude that the court did not abuse its discretion in excluding evidence of the subsequent fence.

The judgment is reversed and the case is remanded for a new trial.

In this opinion SHELDON, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The complaint also named as defendants M. Rondano, Inc., and BL Companies, Inc. The court, *Radcliffe, J.*, granted the motion for summary judgment of BL Companies, Inc., which was affirmed on appeal. See *Fisk* v. *Redding*, 164 Conn. App. 647, 138 A.3d 410 (2016). The plaintiff withdrew his complaint as to M. Rondano, Inc. We will refer in this opinion to the town of Redding as the defendant.

[2] There was evidence that the Bridge Design Manual, which applies to retaining walls, provided that a protective fence is required if a retaining wall is greater than five feet, and subsequently was changed, unbeknownst to the project supervisors, to require any retaining wall exceeding four feet to have a fence. There also was evidence that the wall, as built, complied with the Connecticut State Building Code.

[3] The plaintiff pleaded, inter alia, in his operative complaint: "The said wall, which was within the highway limits of Main Street . . . had a precipitous (approximately [six feet] straight down) drop at the border of the highway right-of-way with the driveway (some [six feet] below) serving [number] 2 Main Street. . . . Said precipitous drop had no protective fencing. . . . As such, the said construction was inherently dangerous and constituted an absolute nuisance. . . . Said wall was constructed upon public land and constituted a public nuisance." The plaintiff offered evidence that he suffered almost $250,000 in past medical bills and between $100,000 and $200,000 in future medical bills.

[4] The court submitted the following interrogatories to the jury:

"1. Has Plaintiff proven to you, by a preponderance of the evidence, that the condition complained of, the subject retaining wall, was inherently dangerous in that it had a natural tendency to inflict injury on person or property? . . .

"[If your answer is 'NO,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'YES,' please proceed to questions #2.]

"2. Has Plaintiff proven to you, by a preponderance of the evidence, that the danger created was a continuing one? . . .

"[If your answer is 'NO,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'YES,' please proceed to questions #3.]

"3. Has Plaintiff proven to you, by a preponderance of the evidence, that the Defendant's use of the land was unreasonable or unlawful? . . .

"[If your answer is 'NO,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'YES,' please proceed to questions #4.]

"4. Has Plaintiff proven to you, by a preponderance of the evidence, that

the existence of the nuisance interfered with a right common to the general public? . . .

"[If your answer is 'NO,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'YES,' please proceed to questions #5.]

"5. Has Plaintiff proven to you, by a preponderance of the evidence, that the existence of the nuisance was a proximate cause of the plaintiff's injuries and damages? . . .

"[If your answer is 'NO,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'YES,' please proceed to questions #6.]

"6. Has the Defendant proven to you, by a preponderance of the evidence, that Plaintiff's own reckless misconduct was a proximate cause of his injuries? . . .

"[If your answer is 'YES,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'NO,' please proceed to questions #7.]

"7. Has the Defendant proven to you, by a preponderance of the evidence, its defense of assumption of the risk? . . .

"[If your answer is 'YES,' you must return a verdict for the defendant by using the defendant's verdict form. If your answer is 'NO,' please proceed to the plaintiff's verdict form.]"

[5] The focus in *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 449, 736 A.2d 811 (1999), was the utility of what the alleged creators of a private nuisance had made by their conduct rather than any contributory negligence on the part of the plaintiffs. The present case involves a claim of absolute nuisance to which contributory negligence is not a defense. See *Warren* v. *Bridgeport*, 129 Conn. 355, 360, 28 A.2d 1 (1942).

[6] The court instructed the jury to determine whether the condition in the particular location had a natural tendency to create danger and inflict injury.

[7] Because of our conclusion with respect to the first issue, it is appropriate for us to give guidance on issues that are likely to recur upon retrial.