******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JESSICA VARGAS *v.* KANG SJUEN, LLC, ET AL.
## (AC 48235)

Moll, Suarez and Westbrook, Js.

*Syllabus*

The defendant property owner appealed from the trial court's judgment for the plaintiff, a mail carrier, who sustained injuries as a result of a fall on a staircase at the defendant's property, which she alleged resulted from the defendant's negligence in failing to maintain the stair railings. The defendant claimed, inter alia, that the court improperly admitted evidence of subsequent remedial measures, specifically, photographs depicting the condition of the staircase after subsequent repairs. *Held*:

The trial court abused its discretion in admitting the photographs depicting the condition of the staircase after the repairs had been made, as the admission of that evidence was made solely for the purpose of demonstrating the defendant's negligence, in violation of §4-7 of the Connecticut Code of Evidence, and that improper admission of the photographs was harmful and likely affected the outcome of the trial; accordingly, a new trial was warranted.

Argued March 10—officially released June 23, 2026

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Hon. Juliett L. Crawford*, judge trial referee; judgment for the plaintiff, from which the defendant Kwong Kang Cheng appealed to this court. *Reversed*; *new trial*.

*Danielle DiBerardini-Albrecht*, for the appellant (defendant Kwong Kang Cheng).

*Vincent J. Mase, Sr.*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant Kwong Kang Cheng[1] appeals from the judgment of the trial court rendered

[1]The plaintiff also named as defendants Kang Sjuen, LLC, and Feng Juan Lin, but the claims against them were previously withdrawn. Accordingly, all references in this opinion to the defendant are to Kwong Kang Cheng only.

after a court trial in favor of the plaintiff, Jessica Vargas, a mail carrier for the United States Postal Service, for injuries she sustained after she fell while delivering mail at certain real property owned in part by the defendant. The plaintiff claimed that her injuries were caused by the defendant's negligence in maintaining the property. On appeal, the defendant claims, inter alia,[2] that the court improperly admitted evidence of subsequent remedial measures. We agree and, accordingly, reverse the judgment of the court.

The following facts, as found by the trial court in its memorandum of decision, and procedural history, are relevant to our resolution of this appeal. "The plaintiff, a mail carrier, delivered mail to the premises [located at 383 Whalley Avenue in New Haven] on . . . July 2, 2016, which has a commercial business on the first floor and tenants on the second and third floor. The plaintiff went up the stairs, delivered the mail, and on her way down she held onto the railing, as she is required to do, pursuant to [United States Postal Service] policy. The railing was loose and rusted out at the bottom and it pushed out. She stumbled, her left ankle rolled out and both her left and right knees buckled going down."

The plaintiff thereafter commenced the present action sounding in negligence against the defendant on June 28, 2018. In her complaint, the plaintiff alleged that she was caused to "slip and/or trip and/or stumble," and that she sustained various injuries as a result of the defendant's negligence. Specifically, she alleged that the defendant was negligent, inter alia, in failing to secure and/or fasten properly the right-hand railing of the

---

[2] The defendant also claims that the court (1) improperly held that the plaintiff met her burden of proof regarding notice of a particular defect, (2) abused its discretion when it precluded the defendant from offering medical evidence to challenge the plaintiff's credibility, and (3) improperly used its personal knowledge in reaching its decision instead of limiting its decision to the evidence presented. Because our conclusion that the court improperly admitted evidence of subsequent remedial measures is dispositive of this appeal and a new trial is required, we need not address these additional claims.

staircase where the plaintiff fell, in failing to inspect the right-hand railing, and in failing to make the right-hand railing safe for pedestrians descending the stairs. The defendant filed his amended answer on January 27, 2023, in which he denied the plaintiff's material allegations of negligence.[3]

The case proceeded to trial before the court on April 3 and May 29, 2024. During the trial, the plaintiff, the defendant, and Feng Juan Lin testified, and various documents and photographs were admitted into evidence. During her direct examination, the plaintiff testified, inter alia, that, at the time of the incident, she "delivered the mail at the top of the stairs. And then, I turned around to go down. And, when I went down the stairs, the railing buckled out . . . like, it gave . . . out. It was rusted at the bottom."

During the plaintiff's direct testimony, two sets of photographs were admitted into evidence. The plaintiff testified that she obtained exhibit 9, which consisted of a set of two photographs from Google Earth, an Internet mapping program, and stated that they accurately depicted the condition of the exterior staircase at the time she fell. The plaintiff testified that exhibit 8, a second set of two photographs, depicted the condition of the staircase "after [her] injury [and] after [the] railings got redone." The defendant's counsel objected to the admission of all of the photographs on foundation and relevance grounds. Following the objection, the court asked the plaintiff's counsel to state the purpose of the proffered admission of the photographs. The plaintiff's counsel responded: "To show that the railing and the steps

---

[3]In his amended answer, the defendant admitted that he, Feng Juan Lin, and Kang Sjuen, LLC, "owned, operated, leased, maintained, possessed and/or controlled at all times the [subject] premises . . . ." At trial, however, the defendant disputed the issues of ownership and control vis-à-vis the subject property and testified that his wife, the defendant Feng Juan Lin, owned and/or controlled the property. The court ultimately found that the defendant was a part owner of the premises and that he had a duty to reasonably inspect and maintain the premises in order to render them reasonably safe. The defendant has not challenged that finding on appeal.

were fixed after she got hurt." The court overruled the objection, stating that it went to "weight, rather than admissibility," and admitted both sets of photographs into evidence. The plaintiff further testified that the premises was a combined business and residence, and consisted of a "laundromat attached with units above." Upon being questioned by the plaintiff's counsel concerning the subsequent repairs to the staircase, the defendant testified that "[Feng Juan Lin had] somebody at [the] laundr[omat]. They want[ed] the building update[d] . . . ." Feng Juan Lin also was questioned concerning the photographs of the stairs, and she acknowledged that exhibit 8 depicted the condition of the stairs after the repairs were completed. After the plaintiff rested her case-in-chief, the defendant's counsel made an oral motion for dismissal, arguing that the plaintiff had not established a prima facie case because she had not proved notice of the allegedly defective condition. The court denied the defendant's motion.

Following the trial, the parties submitted posttrial briefs. In his posttrial brief, the defendant argued that the plaintiff failed to prove that the railings were defective, that there was constructive notice of the defect, and that the defendant had control of the premises. In her posttrial brief, the plaintiff, concerning the issue of the defective condition, compared the photographs depicting the staircase before and after the repairs. The plaintiff argued that "[i]t is obvious there is a strong contrast between the conditions of the railings and stairs before the plaintiff's accident and after the report of the injuries." The plaintiff further stated that "[e]xhibit [9] clearly shows the condition of the stairs as the concrete is deteriorating[4] at the bottom near the sidewalk and in the middle of the stairs leading up to the landing. Proper inspection and a little maintenance would have prevented the plaintiff from falling. *Exhibit [8] illustrates the*

---

[4]The plaintiff's complaint did not allege that the defect in question was the condition of the stairs but, rather, the railings. On appeal, the plaintiff similarly argues that the claimed defect was the railings, rather than the stairs.

*proper set of stairs*, *which should have been in place before the plaintiff got hurt*." (Emphasis added; footnote added.) Finally, the plaintiff asserted that "[t]he defendant only fixed the stairs and new railings *after* the . . . accident (see exhibit 9)." (Emphasis added.)

On November 7, 2024, the court issued a memorandum of decision in which it rendered judgment in favor of the plaintiff. Therein, the court noted the two sets of photographs depicting the stairs before and after the incident. The court stated that "[Feng Juan Lin] acknowledged at trial that exhibits 8 and 9 show the older stairs and the repaired stairs. *If the stairs were repaired*, *then they were defective and needed to be repaired*." (Emphasis added.) The court determined that the defendant was negligent because, "as part owner, manager and the person responsible for maintenance and inspection of the premises . . . he had a duty to inspect and maintain the stairs and the railings." Finally, the court concluded: "The bottom of the stairs and the railings were rusted out and weakened. The defendant should have noticed it over time. That condition could not have occurred slowly and unexpectedly. *The photographs and testimony show that the stairs and railings were repaved*." (Emphasis added.) From the judgment rendered thereon, this appeal followed.

On appeal, the defendant claims that the court improperly admitted evidence of subsequent remedial measures. Specifically, the defendant argues that, "in direct contradiction to the clear rule of our state, the trial court concluded [that], '[i]f the stairs were repaired, then they were defective and needed to be repaired.'" We agree with the defendant's claim.

We begin by setting forth our standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied

the law and reasonably could have reached the conclusion that it did. . . . To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . Additionally, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 627–28, 161 A.3d 562 (2017).

We next identify the relevant legal principles regarding the defendant's evidentiary claim. Section 4-7 (a) of the Connecticut Code of Evidence provides in relevant part: "[E]vidence of measures taken after an event, which if taken before the event would have made injury or damage less likely to result, is inadmissible to prove negligence or culpable conduct in connection with the event. Evidence of those measures is admissible when offered to prove controverted issues such as ownership, control or feasibility of precautionary measures." "Section 4-7, which is an exception to the general rule of admissibility of relevant evidence[5] . . . reflects the settled rule in this

[5]Section 4-1 of the Connecticut Code of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Section 4-2 of the Connecticut Code of Evidence further provides that "[a]ll relevant evidence is admissible" unless there is a legal basis for its exclusion, and that evidence that is not relevant is inadmissible.

As stated previously, the defendant's counsel objected to the admission of the challenged evidence on foundation and relevance grounds. The plaintiff has not argued on appeal that the defendant's claim was inadequately preserved for review. As the rule against the admission of subsequent remedial measures is an exception to the general rule of admissibility of relevant evidence in a negligence action; Conn. Code. Evid. § 4-7, commentary (a) ("evidence of subsequent remedial measures is of relatively slight probative value on the issue of negligence

[s]tate that evidence of subsequent repairs is inadmissible to prove negligence or [as] an admission of negligence at the time of the accident. . . . [S]uch evidence is likely to be of relatively minor probative value. . . . A broad exclusionary rule prohibiting the use of such evidence to prove negligence [or culpable conduct] therefore fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence, even though it requires the plaintiff to make a case without the use of evidence of the subsequent repairs. . . . [E]vidence of subsequent remedial measures may be introduced when the party seeking to introduce the evidence can demonstrate that it is not being used as evidence of negligence but is instead offered to prove another material issue." (Footnote added; internal quotation marks omitted.) *Fisk* v. *Redding*, 190 Conn. App. 99, 112–13, 210 A.3d 73 (2019), rev'd on other grounds, 337 Conn. 361, 253 A.3d 918 (2020). Thus, "[t]he central question is the plaintiff's purpose in introducing the evidence. The doctrine bars evidence of subsequent repairs when offered to prove negligence. It does not exclude such evidence when offered to prove some other material issue." (Internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 448, 899 A.2d 563 (2006); see also E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 4.18.2, p. 198 ("Evidence of subsequent remedial measures is excluded only if offered on the issue of negligence or culpable conduct. If offered for any other purpose, the exclusionary rule does not

---

or culpable conduct at the time of the event"); see also *Hall* v. *Burns*, 213 Conn. 446, 457–58, 569 A.2d 10 (1990) ("The rule of exclusion [of evidence of subsequent remedial measures] has . . . been justified on relevancy grounds. . . . Under the relevancy rationale, changes made after an accident are not probative of the reasonableness of a defendant's conduct prior to the accident." (Footnote omitted.)); and, given our plenary review of the court's ultimate interpretation of the Connecticut Code of Evidence, we conclude that the defendant's claim is sufficiently preserved for review.

apply, provided the evidence is otherwise relevant to a material issue.").

We conclude that the court abused its discretion when it admitted evidence of the subsequent repairs to the exterior staircase where the plaintiff fell, namely, the photographs depicting the condition of the staircase after the repairs. The admission of evidence that the staircase had been repaired after the plaintiff's fall was in violation of §4-7 of the Connecticut Code of Evidence, as it was admitted solely for the purpose of demonstrating the defendant's negligence. As stated previously, when the court asked the plaintiff's counsel the purpose for which the photographs depicting the repaired staircase were offered, he responded: "To show that the railing and the steps were fixed after she got hurt." During the plaintiff's direct examination at trial, the plaintiff's counsel directly juxtaposed the photographs depicting the staircase after the repairs with the photographs of the staircase prior to the repairs. In the plaintiff's posttrial brief, she asserted that the photographs of the staircase after the repairs "[illustrate] the proper set of stairs [that] should have been in place before [she] got hurt."

Moreover, at oral argument before this court, the plaintiff's counsel conceded that the plaintiff introduced the photographs of the repaired staircase to show that it was defective.[6] Specifically, he stated that "we introduced it to show that . . . the railing was replaced . . . that because it was repaired, that means it had to be defective." "Concessions made during oral argument may be properly considered by the appellate courts in rendering their decision." (Internal quotation marks

---

[6]The plaintiff's counsel asserted at oral argument before this court that he did not believe the trial court relied on the subsequent repairs to the stairs in determining that the defendant was negligent. Specifically, he argued that the court's statements concerning the photographs of the repaired staircase reflected the *plaintiff's* argument, rather than the court's conclusion. We do not agree with the plaintiff's interpretation of the court's memorandum of decision. The court clearly stated that, "[i]f the stairs were repaired, then they were defective and needed to be repaired." The court did not indicate that this statement was merely a recitation of the plaintiff's argument.

omitted.**)** *Maner* v. *Commissioner of Correction*, 236 Conn. App. 472, 483, 349 A.3d 21 (2025), cert. denied, 354 Conn. 909, 349 A.3d 1094 (2026). Upon our review of the record, the photographs were not offered for any permissible purpose, such as those delineated in § 4-7 of the Connecticut Code of Evidence, or for any other proper reason, such as impeachment, or to demonstrate another material issue at trial.[7] Accordingly, we conclude that the court abused its discretion in admitting the photographic evidence.

We next address whether the improper admission of the evidence of subsequent repairs was harmful to the defendant. "It is well established that, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the [fact finder's] verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Internal quotation marks omitted.**)** *Kovachich* v. *Dept. of Mental Health & Addiction Services*, 344 Conn. 777, 814–15, 281 A.3d 1144 (2022); see *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 20, 60 A.3d 222 (2013) ("[t]he standard in a civil case for determining whether an improper [evidentiary] ruling was harmful is whether the . . . ruling [likely] would

---

[7]In her brief to this court, the plaintiff cites to § 4-7 of the Connecticut Code of Evidence and argues that "[t]his section is on point and not an abuse of discretion showing that [the defendant] took remedial measures because [he] controlled and owned the premises." Although ownership and/or control of the premises vis-à-vis the defendant were disputed at trial, the evidence of the subsequent repairs were not offered to show ownership or control but, instead, per the representations of the plaintiff's counsel, "[t]o show that the railing and the steps were fixed after she got hurt."

[have] affect[ed] the result" (internal quotation marks omitted)).

"A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial. . . . Thus, our analysis includes a review of: (1) the relationship of the improper evidence to the central issues in the case, particularly as highlighted by the parties' summations; (2) whether the trial court took any measures, such as corrective instructions, that might mitigate the effect of the evidentiary impropriety; and (3) whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . The overriding question is whether the trial court's improper ruling affected the [fact finder's] perception of the remaining evidence." (Internal quotation marks omitted.) *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, supra, 308 Conn. 20–21.

Having reviewed the entire record in this case, we are convinced that the court's improper admission of the photographs depicting the staircase after the plaintiff's injury was harmful and likely affected the outcome of the trial. The condition of the staircase, particularly the railings, was a central issue in the case, because that was the claimed defect that the plaintiff alleged caused her injuries, and the evidence of subsequent repairs was expressly offered to show that there was a defect. As noted previously, the plaintiff also repeatedly relied on the evidence of the repairs in her posttrial brief, stating, inter alia, that there was a "strong contrast" between the conditions of the railings before and after her fall, and that the photographs of the stairs after the repairs "illustrates the proper set of stairs which should have been in place before the plaintiff got hurt." Thus, the improperly admitted evidence related to the central issue of whether the stairs were defective at the time of the plaintiff's fall. See, e.g., *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, supra, 308 Conn. 21 (evidence of replacement stairs related to central issue of whether

original step complied with building code and, thus, was improperly admitted**).**

On appeal from a bench trial, there is a presumption that the court, acting as the trier of fact, "considered only properly admitted evidence when it rendered its decision." *State* v. *Roy D. L.*, 339 Conn. 820, 842, 262 A.3d 712 (2021). In this case, however, the court, who was the fact finder in the present case, expressly relied on the improperly admitted photographs depicting the postaccident repairs in concluding that the defendant was negligent. The court stated: "If the stairs were repaired, then they were defective and needed to be repaired." The court then described the defective condition, stating: "The bottom of the stairs and the railings were rusted out and weakened. The defendant should have noticed it over time. That condition could not have occurred slowly and unexpectedly. The photographs and testimony show that the stairs and railings were repaved."

Moreover, the improperly admitted evidence was not merely cumulative of other properly admitted evidence. Although the plaintiff testified that the railing "buckled out" and was "rusted" at the bottom, she did not provide any additional specific evidence regarding the alleged defect. "[I]n the context of a harmless error analysis, it is not enough that there was other evidence in the record to support the [court's judgment]." *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 359, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007). The relevant question is "whether the ruling . . . [likely] would [have] affect[ed] the [trial's] result . . . and . . . this assessment can include merely whether the trial court's ruling affected [the fact finder's] perception of the remaining evidence." (Citation omitted; internal quotation marks omitted.) Id. Given the court's determination that the photographs conclusively established that there was a defect, we conclude that the introduction of the photographs likely affected the trial's result and was not wholly cumulative of other evidence. See, e.*g.*, *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 257–58, 9

A.3d 364 (2010) (expert's testimony was "uniquely" important to central issue in case and was not merely cumulative of other testimony). We therefore conclude that the court's statements concerning the subsequent repairs constituted an improper application of §4-7 of the Connecticut Code of Evidence.

Weighing the totality of the evidence presented at trial, we are persuaded that the improper introduction of the evidence of subsequent remedial measures likely affected the result in this case. Accordingly, we conclude that the admission of such evidence was harmful and that a new trial is warranted.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.